Good morning. May it please the court, my name is George Wallace. I am appearing today as counsel for the appellant in both of these cases. At this point, I propose to argue them jointly and I reserve five minutes, if I may, for reply at the end of the day. I guess it's a need to know how counsel for appellees will, but you can tell us when we come to you. Your Honor, the case before the court involves two sets of ordinances which are similar in that they purport to be regulations of parking within various municipalities, but have in common that they are also regulations of parking that are directed specifically to vehicles with or without motors that carry upon them speech. And not only are they parking regulations, but they are parking regulations that empower state actors to seize and impound the property of private citizens, specifically the vehicles or non-motorized vehicles on which this speech is born, and that possibly carry criminal penalties. So this is clearly a regulation of speech, and it is a regulation of speech that we would submit is on its face a content-based restriction, whether it is the restriction on advertising signs on trailers or the restriction on advertising and all variety of other non-permanent signage being born on a motor vehicle. We requested, and the court kindly granted, an opportunity to file supplemental briefing in this case relating to the Supreme Court's decision in the case of Reed v. Town of Gilbert. The Reed case, in its form as decided by a panel of this court, was the explicit basis for a number of the rulings both in the district court on both of these cases and of a prior panel of this court in reviewing the denial of a preliminary injunction in the Lone Star case. After the consideration of the Reed v. Town of Gilbert matter by the U.S. Supreme Court, it appears that the law of the United States is now established such that both these sets of ordinances need to be deemed to be a facial content-based restriction on certain types of speech and therefore subject to strict scrutiny. None of the appellees have ever proposed that their respective ordinances can withstand the strict scrutiny standard. They cannot provide a compelling state interest. They cannot identify how these restrictions are necessary to the advancement of that interest. If we conclude that these ordinances are, as I believe they are, content-based, then they are unconstitutional on their face because they cannot stand that test. Alternatively, if the court does conclude that these are not content-based restrictions, they still do not satisfy the more intermediate standard of being reasonable restrictions on the time, place, and manner of speech. Yeah, so let me jump in here. The state or the city of Los Angeles has offered two reasons, as I understand it, to support these restrictions. One is they have some safety, alleged safety concerns, and I'll tell you right now I'm a little skeptical of those in this case. But they also have the visual blight, and that's actually in there. And if you could focus your argument on how we overcome that, because there's a case from the 80s, and there's other cases, Metro Media and so forth, that say visual blight is something the city can take into consideration. And so that's where I'm having the trouble with your argument. Visual blight, Your Honor, is an interest of the state that can be taken into consideration if we are applying the intermediate review standard of reasonable time, place, and manner. I don't think, for reasons I can get to, that it actually gets the cities over the line in this particular case. But it has been held that visual blight, aesthetics basically, is not a compelling state interest that can be utilized to support an enactment if it is content-based and subject to strict scrutiny. It's important, but it's not compelling. And the cities cannot, based on blight, argue that these restrictions are necessary to a content-based restriction. And I think that particularly the ordinance relating to signage on motor vehicles has to be deemed content-based under the rationale of Reed v. Town of Gilbert, because within its own terms, it singles out different varieties of speech for different treatment. It, for example, includes a specific exception for advertising by auto dealers that they put on license plate frames attached to an automobile. It singles out identifying marks on vehicles or decorative marks on vehicles so long as they are permanently affixed. The distinction between permanent and temporary signage operates, in effect, as a content-based restriction itself, because there are certain sort of messages that you may want to put on your motor vehicle that, by their nature, are going to be temporary. Just married, a sign advertising a charity car wash, things of that sort. Flying a Laker flag when Lakers were still worth flying flags for. These would be necessarily temporary expressions and they are blanket banned because of the temporary nature. Now, on the non-motorized vehicles, the mobile billboard advertising displays, which are the subject of multiple ordinances by the appellees. Those have been held by a panel of this court not to be content-based, based on the premise that the purpose of advertising basically encompasses all speech. The logic seems to have been that advertising is speech, therefore all speech is advertising. I would submit that the panel that reached that decision was in error in this regard. It's a bit of a head-scratcher. Are we bound by that decision? You are not, Your Honor. The district court was bound by that decision because it was law of the case in the Lone Star action. But as we indicated when we requested and obtained leave to supplement the briefing in this case, that decision is not binding on this panel. The Ninth Circuit is freely empowered, in its discretion, to revisit that prior decision. In view of the fact that it was based upon... I don't think a panel is. The court can revisit it on bank. But I don't know of any reason that this panel isn't bound by that decision. As I understand the law of the case doctrine as it operates here... I'm not talking about law of the case. I'm saying the general rule in our court is a panel is bound by any outstanding Ninth Circuit case. And we are only free not to follow it if... and on bank court. I wondered whether you had any exception to that. I am not aware of a specific exception. And under the general law of the case doctrine, it is a matter for the discretion of the court if you have the ability to do that. I submit that you should revisit it simply because it is founded upon a decision that is no longer good law. That entire rationale is based on the Reid case, and the Reid case has subsequently been reversed by the Supreme Court. Secondly, the California courts have construed advertising as broader than some of us might have conceived of advertising. They have said that advertising includes not just commercial advertising, but any kind of speech, any kind of statement. Whether that's right or wrong, that's how they interpret the use of advertising in ordinance such as this. Aren't we bound to follow the California courts on the interpretation of a California ordinance? Your Honor, I do not believe you are bound by that interpretation as a matter of constitutional law. The question of what is or is not advertising goes to the question of what is or is not a content-based restriction. We may not be bound, but aren't we supposed to give a lot of deference? And wouldn't that make sense, that we would give a lot of deference to how California is interpreting the constitutionality of its own ordinances? I mean, it seems like there is case law to say that we should give some due deference to the courts when that happens. You can and you should certainly defer to the courts of California in terms of their interpretation and determination of what a statute means. However, on a matter of the United States Constitution, the rulings of a California court would not be binding upon this. They may be persuasive, certainly, but they would not be binding as a matter of determining what the Constitution permits or does not under the First Amendment. That is a matter that is certainly within the ambit of this Court, regardless of what the State of California may be doing. And as we have shown in the briefs, the State of California is not consistent in its interpretation of the term advertising as being as all-encompassing as it has been found to be in this case. There are many circumstances, both statutory and judicial, in which advertising as a class of speech is distinguished from other sorts of speech. But let's talk about it, because if I understand your argument, you're saying the signs are content-based because they're advertising. Is that right? I am arguing, Your Honor, that by describing the content of the signs as advertising, the ordinances and the authorizing statutes distinguish the type of speech that is advertising, however broad. Because it's commercial speech. Well, it's not commercial, because there's nothing in any of these ordinances that points to commercial. It would equally apply to political advertising, public service advertising. The panel previously, in the Lone Star case, found that any sort of speech, a blank trailer that was there for the purpose of conveying a sense of existential despair or nihilism, would be an advertisement under the rationale. We had this discussion with that panel, as a matter of fact. If you put a flag on it, simply to display a flag, that would be deemed to be advertising under the interpretation from the prior panel. And I don't think that an ordinary person looking at this ordinance and looking at a flag would say that's advertising. But that's how, unless we encompass all content, then advertising is segregating out maybe a large swath of content, but still not 100 percent. And therefore, it is discriminating in the treatment of content based upon its purpose and its message. Because you're saying that it... I guess I'm trying to figure out, in order for a law to be content-based, it must be either different or subordinate to certain types of speech from other types of speech, right? So what kind of speech are you arguing here is being given preferential treatment? It's not so much speech being given preferential treatment. It's that a large swath of speech, but not all speech, is being singled out for detrimental treatment. And which type of speech? Political or advertising? Because you're making all kinds of arguments. I'm trying to figure out, are you saying it is advertising and it also is political? No, Your Honor. I'm saying that advertising is itself a purpose that does not encompass all speech. And it is only speech that constitutes advertising that is being restricted here. Meaning all other sorts of speech, however we may define it, are not restricted. But you're also arguing that it affects political speech. It encompasses political speech, but it is not exclusively targeted at it. What the Supreme Court says is that this content-based restriction would be pointing to a particular subject matter and saying we're going to regulate this subject matter. Clearly content-based. But you can also, in a more insidious way, get to content-based restrictions by describing the purpose for which the communication is being made. And here, the ordinances concerning particularly the non-motorized vehicles specify that to on a vehicle for the primary purpose of advertising. So however advertising is defined, it's a purpose different from other purposes. The California courts recently, in a similar case, they said the term advertise is not limited to calling the public's attention to a product or a business. The definition of advertise is more general. Quote, to make something known, to make publicly and generally known. It's everything. You're right. They say any kind of communication to the public, whether it's your patriotism, whatever it is, is advertising that sentiment. Now I'm not defending that definition, but that is how California courts construe an ordinance that bans advertising. You are correct, Your Honor, and that is also, at the most fundamental level, exactly the rationale that the prior panel of this court adopted in the Lone Star case. I would submit that that rationale is incorrect, that it reads too much into advertising, and that the only, if advertising encompasses anything that is being conveyed in public as that authority and as the prior panel basically concluded, then the reference to advertising in these ordinances becomes surplusage because everything is advertising if you put it out in a public place. And that seems rather significantly overbroad. My time is about to run out, so I do want to emphasize that even if the court finds that this is not a, that one or both are not content-based, there is still, I think, a very good argument that none of these ordinances satisfies even the intermediate test in terms of the reasonableness of the time, place, and manner. Basically, you have an entire medium of communication that is being excluded from the entirety of the city of Los Angeles or other municipalities. And it does not satisfy even the intermediate test for a near fit to the advancement of the interests. And there was no showing in the court below in terms of evidence that the blight issue to which we have already had reference actually even exists here. The cities did not put on that evidence below. Let's just say that there is a blight issue. Can you identify or give an example of a less restrictive alternative other than your billboard that the city should have considered other than an outright ban? We discussed this in the briefing. And this was an issue that came up in the Redondo Beach case involving the in-person solicitation of work on the side of the street. And this circuit was very concerned in that case that by making it a blanket citywide ban rather than confining it to specific locations where the city could show there is an actual problem, it was overbroad and therefore an unreasonable regulation of time, place, and manner. We also cited the fine-tuning that the city of San Diego has done in its billboard regulations in which the size, placement, location of billboards and other signage varies from place to place depending on the conditions on the ground, how much traffic, what speeds, things of that sort. It does not operate as a blanket ban as the ordinances do here. Well, you know, that's a problem not uncommon in law, which is you adopt principles in a lot of cases. The blight issue, if taxpayers, Vincent, for instance, which is a direct blight case, says, well, you know, you can have lots of blight in Los Angeles, as we do. But if you want to eliminate one kind of blight, the fact that you allow other kinds doesn't matter. You still have a right, the city has, to eliminate one kind of blight. Now, how does that fit with these tests that we boast of so proudly about, you know, whether it's the narrow tailoring and all of that? Well, I don't know how it fits because it's over-inclusive, it's under-inclusive, it's everything. But the court just said, if you want to eliminate one type of blight, go ahead and do it. I mean, I can say that because I was on the other side of that case. I was reversed. But that's what the Supreme Court said. It is certainly true, Your Honor, that the cities have the right to pick and choose which particular problems they address. The issue in this case would be, having selected the perceived problem of signs on vehicles parked beside the road, they then did not fine-tune the solution to that particular species of blight so as to accomplish this tight fit, because it is unquestionably targeted specifically on blight in the form of protected speech-based conduct. So there needs to be not a perfect fit, but a much nearer fit than these ordinances are providing. With that, if the Court has no more questions at this time, I will defer  to the time you requested for rebuttal, because we used your time up for you. Thank you, Your Honor. I appreciate it. Good morning. May it please the Court, my name is Joseph Buckman, and I'm here on the Lone Star case appearing for the City of Santa Clarita. How are you dividing your 20 minutes? We decided that we'd address the Lone Star case first, and hopefully that'll take less than 10 minutes, and then the City of Los Angeles will address the Amari case. If you go up to 10 minutes, I'll try to remind you of it. All right. Hopefully it'll be shorter than that, and then other counsel will step forward for their clients. Fine. Thank you, counsel. Thank you, Your Honor. The main point I want to make is that there has been no change in the relevant sign law other than the Town of Gilbert case, in which the Supreme Court determined that the ordinance at issue in that case was not content-neutral under existing sign law. But as explained in our joint appellee's brief and in our supplemental appellee's brief, the City's ordinances are drastically different from the Town of Gilbert ordinance. The ordinances at issue here do not contain 19 exceptions to their prohibition of what would constitute a mobile billboard advertising display. And also, as the panel was engaged in discussion with the appellant's counsel, the term advertising in the definition of a mobile billboard advertising display is still content-neutral, as was held by the Court's panel on March 21, 2013. And in that decision, the Court was pointing out that California law defines advertising very broadly to encompass any communication. There are also federal cases that hold that, and those are cited in the memorandum decision from 2013. Also, the dictionary. Advertising is a very general term, and the point of prohibiting mobile billboard advertising displays under the state law and under the ordinances that are enacted pursuant to that state law is to prevent the visual blight, the aesthetics, the damage to the aesthetics, and the health and safety issues of visual distractions to drivers. Why did the legislature need to include the word advertising at all? I mean, couldn't it simply have said ban signs of a certain size rather than advertising signs? I'm not quite sure why they included advertising. I don't know, Your Honor. It's the word that they chose. It's the word that we were, the cities, used when they adopted the definition for their own ordinances. It is a very generic word. Council for Appellant tries to paint it as a particular kind of speech, but it also is a very general kind of speech, and this was discussed in our briefs. It's hard to see what could be not advertising. Well, counsel, I think of living in San Diego. There's a street called Miramar Road, and on Miramar Road there is a Planned Parenthood or a similar facility, and I see people out sign holding up signs of, you know, don't go here, Christ will save your child, and then I see the guy spinning the signs for the furniture store next door. Now, if you were going to ask me which one of those was advertising, I wouldn't point to the people in front of the abortion place. I'd point to the sign spinners. I would never, advertising would frankly never come to my head. So, can you point to another area where we have used the word advertising to talk about what's not advertising, I guess. I don't know what other way to put it. Your Honor, I'm sorry. As I stand here, I can't, but I can just point to the cases that are in the memorandum decision, the fashion boutique of Short Hills versus Fendi USA. The ordinary understanding of advertising connotes activity designed to disseminate information to the public. So under that definition, holding up the sign in front of the Planned Parenthood clinic would be advertising, even though it might not occur to an observer that that's what that is. But when we're dealing in statute and coming up with language for laws, sometimes we're constrained by coming up with the most accurate term and I can see why the legislature would have used advertising. So, just for me to sum up my time, there's nothing in the Supreme Court's decision in the Town of Gilbert case that would disturb the conclusion that the panel made back in 2013 and that the District Court followed in granting judgment in favor of the cities in this case. Therefore, we would respectfully request that the judgment of the District Court be affirmed. I had one other offer. We noted in preparing for oral argument that photographs that do exist in the District Court's record of mobile billboard advertising displays of the appellant were not in the appellate record. And I would offer to either direct the court to where those can be found in the District Court's file or we could submit a supplemental excerpt of record with the document. It was a request for judicial notice at that time where those photographs are located so the court could have a visual, if the court deems that helpful and if it would be permissible. That's all. Thank you, counsel. Good morning. May it please the Court. I'm Richard Holdaway, City Attorney for the City of Loma Linda. And I would join in the comments that were made by counsel. Is there someone from the City of Los Angeles? I think she's over there. Is she going to speak also? I had understood that we were reserving five minutes per city. Oh, okay. I thought he said there were ten and ten.  Yes, Your Honor. And it's all going to each take five minutes. We were told we had twenty minutes total. Yes, that makes four, ten, five, and twenty. Okay. Let's do the City of Los Angeles first. Good morning, Your Honors. My name is Kim Erickson on behalf of the City of Los Angeles for both Amari and for Lone Star. May it please the Court. Appellant counsel contends that the ordinance in the Amari case is content-based because it enumerates three different purposes in the ordinance. The sign on the vehicle must be permanently attached for purposes of decoration, display, and identification. However, appellant misconstrues the ordinance as far as stating that it's a content-based ordinance because it does not – any sign can fall under any of those three enumerated purposes. Not only does advertising mean nothing because it means everything, but decoration, identification, or display also means nothing because it means everything. Well, it could be – a sign could fall under decoration. I think in the City's brief we argued that if someone wanted to put – Okay. Is that correct when I questioned you that decoration, identification, or display includes any kind of sign that could be put on? Correct. So you don't need the words at all? You just say any sign? That would be – yeah, that's correct, Your Honor. So the whole – half the ordinance seems to be totally unnecessary or that contains words we should give no meaning to and we should assume the legislature didn't know what it was doing, whether it included a lot of surplusage in the ordinance. Well, no. Respectfully, I disagree, Your Honor. As far as decoration, identification, display, a UPS logo on a sign would identify that truck. Oh, I can think of things that are identification. I can think of things that are decoration. Think of things that are display. Tell me something that isn't decoration, identification, or display. Any sign would fall under those categories. It could be one – So why do we have the words for decoration, identification, or display? What does that add to the ordinance? Well, I mean, it just – some signs may fall under – may decorate, but all signs will display. So it could fall under only identification, but – no, it could fall under identification as well as display. So I don't have the answer, Your Honor, as far as what the legislature was intending. As I understand your position, the word advertising is totally unnecessary and the words for permanent decoration, identification, or display are also totally unnecessary because both – the ordinance would mean the same thing without any of those parts in it. Well, Your Honor, the advertising, I understand from the discussion earlier, advertising – Means everything. Everything. Means anything that is drawn – that's something that is drawn – attention that is drawn to something. So it's – I mean, that's how the dictionary defines it. That's how this court's panel defined it. That's how the second – the appellate court, the state appellate court defined it. The dictionary defines that as broad. And as far as our everyday usage of advertising, I understand that our everyday usage of the term advertising could connote a more commercial aspect, but however, that's not how this court's panel or the state or the dictionary – No. As long as the sign – you look at how the sign – the officer would look at how the sign is displayed on that vehicle if it's permanently attached or if it – and if it doesn't extend the dimensions of the vehicle, then it falls within the ordinance. So I don't have to look to see whether it's for decoration, identification, or display? No.  I'm not sure. I mean, I do not understand. I did not – I respectfully answer that I did not write the ordinance, so I'm not 100 percent sure. Well, I'm sure you're a better lawyer than whoever wrote this ordinance. Counsel, if I could ask you about blight, I'm looking at some of the pictures that we do have in the record, and there's a picture of a white van. I'm looking at ER 138 and 139. There's a white van with some big signs on them. I think we've all probably seen them. My understanding of the ordinance is that if that sign were painted on the van, no problem under the ordinance. That's correct. From a blight perspective – look, I would not want my car to look like this, I'll be quite honest. But if the sign is taped on there or bolted on there or it's painted on there, it looks the same to me. So from a blight perspective, how is the painted-on C-scrub foot massage for $21 – how does that look better or worse than if there's a piece of cardboard taped to the outside? Well, Your Honor, it's also – the blight also involves, say, the sign became detached. Okay, well, but the law can be narrowly tailored to make that clear. If the sign is detached, you have a problem, much like the person who litters the flyer has a problem. But as to blight, if a car is – and let's say Lone Star, they've got the best welders in town, and they weld that thing on there, so it's like space shuttle tough. And they park it on the side of the road, and then right next to it is a van where it's painted. The exact same thing. Under the ordinance, the painted one is okay and the bolted-on one is not, correct? Correct. From a blight perspective, I might think they're both ugly, but the fact is I'm not sure why the law would permit painted and not bolted if they both look the same. Well, Your Honor, I would direct the court to Appellant's Excerpts of Record, page 138. And if the court looks at that van with the billboard hanging off over the back of the van, that is not a sign that would comply with the ordinance because it's not – it extends the dimensions of the vehicle. Sure, but what – And that is blight, Your Honor. I mean, having a number of cars parked on the street looking like that. But if they were all painted, same bright yellow, painted one after the other, no problem. Correct. I guess I'm – look, if it's hanging over, that could be a safety issue. It could be narrowed and deteriorated to make sure signs don't get trapped under the wheels. But again, I need you to help me on this one. From a visual perspective, what is the difference between a white van with a painted yellow sign, $25 deep carpet cleaning, versus one that has it taped on the outside? And all I can do is direct the court's attention to that. Oh, you can do better than that. You can – if you want a little help with an answer. You know, you could say you could have it on a huge billboard right there. And it would be much more blight than having a little truck with a sign on it. But you decided to eliminate one form because it gets rid of one category of blight. Now, that may not be a very good decision. But that one category where it's not on permanently is just one category that the city can do. It's going to cut down on the blight by eliminating that category. That's your answer, whether it's a good one or not. It's better than saying, well, it's going to fall off because he's not asking. Judge Owens isn't asking about whether it's going to fall off. He says, why is it more blight? More blight because there's going to be a whole extra category of types of ads, those that are attached instead of those that are painted. You know, that's either what the Supreme Court's saying in the city of Vincent and in Metro Media, or it isn't. If it isn't, you're going to be in trouble. Well, and blight is not the only government interest. But that's the interest he asked you about. So why don't you answer the question he's asking you about, blight, unless you want to give up on blight. I'm respectfully trying to answer the question, but I have answered that. Well, you just answered the question about why is it a category of blight by saying, well, we've got other reasons. That's not an answer to Judge Owens' question about why is it a different kind of blight. Well, I think just looking at the picture, Your Honor, and having the sign how it is hanging off the side of the van, I mean, without this ordinance, anyone could put any type of van. I mean, I think the answer has to be for you to prevail, has to be they're equally blightful, if I can use that term. They're equally blightful, and the Supreme Court has said that a municipality can start with one form of blight and decide another day or never to get around to the other form of blight. I mean, I think that has to be your answer, because if we're talking about what's the uglier van, you know, they're both pretty ugly. So I don't think we're talking about the ugly van contest. I'm not sure who the winner is going to be. But I think it has to be what Judge Reinhart is suggesting, unless there's something else that I'm missing here. So is that your position, that the city may target one form of blight, even though there may be another form of blight right next to it, and that's permissible? No, I mean, the city could. The city could, although the other type of van is not violating the ordinance. Well, no, that's the whole problem, though. So, I mean, I think, again, and I don't want to dominate people's time here. I apologize to my colleagues. No, you're doing fine. But I just want to make sure that is the city's position that they're equally blightful, the painted van and the I'll call it the bolted van, and that's okay, that the city can take that approach under. Yes. Okay, that's the position. Yes, Your Honor. Okay, that's what I want to understand. Okay, and you would point to? Metro Media. Metro Media, okay. That's correct. How about taxpayers for prevention? Your favorite case. Yes. Yes? Yes. Okay. Does the court have any additional questions? No, are there any other people who want to face the panel? The court and the city of Los Angeles would respectfully request that the court affirm the lower court's decision. You have two minutes. Again, may it please the court, Richard Holdaway for the city of Loma Linda. Back on the Lone Star case, I represent a small city of 21,000 people, residents, but we have these large institutions, hospitals, medical centers, universities, so we have an influx at all hours of the day and night of people, visitors, patients, and students, and so forth. Parking and traffic are serious, serious problems in our city. The state legislature, in its findings that enabled the city to adopt the ordinance in question, pointed out the not only blight, but the effect of these mobile billboard trailers parked on the city streets, visual blight, safety hazards to motorists, impairment of visibility to motorists and pedestrians, and pointed out the important governmental purpose of preserving limited parking for its intended purpose. So that was the basis for our adopting this ordinance, and those are substantial government interests that could not be met in any other way that I know of other than to prohibit these flimsy, non-motorized trailers from being dropped off at multiple locations throughout the city. They take up parking. They impair visibility. They are dangerous. And if you've lived through one of our famous Santa Ana winds, you know what I'm talking about. These things are not attached to a large vehicle that has a motor. They're not affixed to the ground in any way. When the wind comes up, these things migrate across the road. Now, we didn't have to address all of these things in the record because the legislature already found, and this is at page 81 of the appellant's excerpts of record, where the legislature made those findings. The district court adopted those findings and reiterated them in its decision. That decision was upheld previously by this court. So those impacts that are addressed by this ordinance are substantial, and the interests of the government, in this case the city of Loma Linda and the other cities, is reasonable to address these sorts of problems. Now, are there alternative means of communication? Yes. Vehicle-borne signs that are driven around the city are not addressed by our ordinance, nor are hand-carried signs. Fires and so forth, vehicle wraps, there are a lot of different means of communicating, other than dropping off one of these flimsy trailers on the side of the road or in a limited parking location. So we feel that under Reed v. Town of Gilbert, the court left specific guidance to this court, and one of the factors that was mentioned was portability of signs. Another was signs posted on public property. So here we're banning a narrow category of sign, a portable trailer, basically, where other methods of communication are readily available. So this was done in an even-handed, content-neutral way. I haven't heard any category of message that could be posted on one of these portable signs that would not be governed by this ordinance. We had this discussion previously before the prior panel. I want to give you about 20 seconds more or so. I will conclude by saying that even a blank sign has the same negative impacts that were sought to be addressed by this ordinance. So I would ask the court to respectfully affirm the lower court decision. Thank you very much. All right, we'll give you, let's see, three or four minutes at most. Thank you, Your Honor, and I will be brief. It strikes me as ironic that by adopting such a broad definition of advertising, we are now managing to apply a less rigorous standard to the examination of ordinances that effectively ban all speech than we do to ordinances that are more selective. Here, as the Supreme Court emphasized in Reed v. Town of Gilbert, innocent motives do not justify an enactment that still acts on a content basis. And one of the concerns the Supreme Court expresses in Reed v. Town of Gilbert is that even more or less facially neutral enactments can be used simply because of their breadth to target disfavored speech in enforcement. Now, the case before the court is a facial challenge. We have not presented an as-applied challenge at this time. But the danger of picking and choosing among favored and disfavored speech based upon its content is inherent in the breadth of these ordinances. Briefly on the subject of blight, the method of attachment really cannot be characterized as contributing to the blight. If it's blightful, it's because it's an ugly car, not because it's an ugly car with tape as opposed to welding, as opposed to painting, etc. I believe that revisiting the authorities we've put in the briefs will conclude that these actually are content-based restrictions that cannot withstand the strict scrutiny test. Failing that, I don't think they qualify as reasonable time, place, and manner restrictions. That being said, if the court has any further questions, I would be happy to address them. Otherwise, I will submit this matter for your decision and ask you to reverse the ruling of the district court in both of these cases. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted.
judges: Reinhardt, Murguia, Owens